SUMMARY MEMORANDUM OPINION; NOT INTENDED FOR PUBLICATION.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MARY C. MEDLIN**,<br><br>            Plaintiff,<br><br>            v.<br><br>**ARCHITECT OF THE CAPITOL**,<br><br>            Defendant. | Civil Action No. 9-cv-2402 (RLW) |

**MEMORANDUM OPINION**

Plaintiff Mary C. Medlin brings this discrimination claim against the Architect of the Capitol (AOC) alleging gender and age discrimination, as well as hostile work environment and retaliation in violation of 2 U.S.C. §§ 1311(a)(1), 1311(a)(2), and 1317(a). (Doc. 1.) At the time of the incidents which gave rise to her complaint, Plaintiff was Assistant Director of Personnel in the AOC's Human Resource Management Division. Plaintiff challenges the abolishment of her position, which led to her early retirement.

Seeking dismissal of all Plaintiff's claims, Defendant filed a motion to dismiss or, in the alternative, motion for summary judgment. (Doc. 9.) For the reasons explained below, the Court finds Defendant's motion is due to be granted, in part, and denied in part.

**LEGAL STANDARDS**

The Court must treat a Rule 12(b)(6) motion to dismiss as a Rule 56 motion for summary judgment if "matters outside the pleadings are presented to and not excluded by the court." Fed. R.

Civ. P. 12(d). In so doing, the Court must allow all parties "a reasonable opportunity to present all the material that is pertinent to the motion." *Id*. Here, both parties refer extensively to documents outside of the complaint and there is nothing in the record which might indicate the parties did not have a reasonable opportunity to present all pertinent material. Accordingly, the Court will treat the Defendant's motion as a motion for summary judgment.

The party seeking summary judgment bears the initial burden of demonstrating no genuine issues of material fact exist. *See* Fed. R. Civ. P. 56. When determining whether genuine issues of material fact exist, the Court must draw all justifiable inferences from the evidence in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), *cited in Cruz-Packer v. Dist. of Columbia*, 539 F. Supp. 2d 181, 189 (D.D.C. 2008).

## ANALYSIS [1]

**A.    Retaliation Claim (Count V):**

No genuine issues of material fact exist with respect to Plaintiff's retaliation claim because it is undisputed that she engaged in protected activity after she was informed about the challenged employment decision. Plaintiff admits that Chief Administrative Officer (CAO) David Ferguson verbally informed her, sometime in mid-to-late April 2009, that the Acting Architect of the Capitol said he would abolish Plaintiff's position. (Medlin Decl. ¶ 31.) On June 30, 2009, Plaintiff received a confirmation letter notifying her that her position was to be abolished effective August 30, 2009. (Medlin Decl. ¶ 39; Def.'s Ex. C.) In that letter, she was advised that she was eligible for a "discontinued service retirement" and she was also advised that she could apply for other

---

[1] This summary memorandum opinion is written with the understanding that the reader is familiar with the facts and arguments found in the pleadings.

positions. (Def.'s Ex. C.) A little over one month after receiving the letter, Plaintiff informed Ferguson that she was going to submit an EEO complaint, which she did several days later on August 10, 2009. (Medlin Decl. ¶¶ 43-44, 48.) The complaint was mediated on August 27, 2009, and apparently mediation was unsuccessful. Three days later, on August 30, 2009, Plaintiff received a letter confirming abolishment of her position and explaining that a termination action would be processed if she failed to submit her retirement paperwork by close of business. (Def.'s Ex. D.) Contrary to Plaintiff's argument, this final August 30 letter did not constitute retaliation for Plaintiff's EEO complaint; it is undisputed that Plaintiff filed her EEO complaint between the time she received the initial June 30 letter and the final August 30 letter. Thus, the EEO complaint could not have been the cause of the decision to abolish her position. Accordingly, Plaintiff's retaliation claim must fail.[2]

**B.     Hostile Work Environment Claims (Counts III & IV):**

No genuine issues of material fact exist with respect to Plaintiff's hostile work environment claims. "[Conduct] creates a hostile environment only if it is so 'severe or pervasive as to alter the

---

[2] Plaintiff's discussion with Ferguson about the problems she was having with her supervisor (Tiscione) did not constitute "protected activity." *See* 42 U.S.C. § 2000e - 3(a). Although the discussion with Ferguson occurred prior to the challenged employment action, Plaintiff admits she did not tell Ferguson the nature of her problems with her supervisor. (Pl.'s Br. at 2; *see* Medlin Decl. ¶¶ 19-20, 24). Without a complaint about alleged discriminatory treatment, Plaintiff's discussion with Ferguson was not "protected activity." *See Barber v. CSX Distribution Services,* 68 F.3d 694, 701 (3rd Cir. 1995) (finding plaintiff did not engage in protected activity where he sent a letter complaining about "unfair treatment and [his] dissatisfaction with the fact that someone else was awarded the position, but [did not] specifically complain about age discrimination."); *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 512 n. 4 (3d Cir. 1997) (finding general grievance about working conditions and questioning job security did not constitute protected activity where letter did not contain any reference to conduct that is protected by federal anti-discrimination laws).

conditions of the victim's employment and create an abusive working environment.'" *Taylor v. Solis*, 571 F.3d 1313, 1318 (D.C. Cir. 2009) (citing *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 67 (1986)).

In her complaint, Plaintiff makes the following allegations in support of her hostile work environment claim:

> The pattern of decisions taken by Defendant's decisionmaking agents resulting [in the abolition of Plaintiff's position] created a hostile work environment which deprived Plaintiff of a workplace environment free from unlawful discrimination . . . .
>
> . . . .
>
> There was a direct and proximate nexus between Plaintiff's [protected status] and the pattern of on going [sic] and continuing decisions taken by Defendant's decisionmaking agents resulting in the creation and sustaining of the on going [sic] continuing hostile work environment and Defendant's violation of terms, conditions and privileges of Plaintiff's employment.

(Compl. ¶¶ 34, 36, 40, 42.) Plaintiff's complaint does not contain "sufficient factual matter" from which this Court may "draw the reasonable inference" that she experienced conditions "so 'severe or pervasive as to alter the conditions of [her] employment and create an abusive working environment.'" *See Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (requiring that a plaintiff's complaint include sufficient facts to support plaintiff's cause of action); *Taylor*, 571 F.3d at 1318 (explaining the standard for establishing a hostile work environment claim). Furthermore, the declaration she submitted in opposition to Defendant's motion contains no detailed descriptions regarding alleged hostile work environment. As such, these claims fail as a matter of law.

**C.      Age Discrimination Claim (Count II):**

Nothing in the record supports Plaintiff's age discrimination claim. She makes no specific

arguments relating to her age discrimination claim in her brief. In the complaint, Plaintiff alleges only two positions were eliminated: her position and the position of her supervisor. (Compl. ¶ 17.) Additionally, Plaintiff alleges the following:

> There were no employees under the age of 40 whose positions were abolished pursuant to the reorganization who performed substantially the same duties and responsibilities post the reorganization as they had performed before the reorganization.

(Compl. ¶ 19.)

These allegations do not support an inference of age discrimination because Plaintiff does not proffer any comparators under the age of forty. It is undisputed that Plaintiff's immediate supervisor, Rebecca Tiscione, requested abolishment of her own position so that she could retire early. Thus, abolishment of that position does not help Plaintiff's case.

Similarly, Plaintiff's inquiry about abolishment of her own position does not help her case. Indeed, she admits she asked "COA Ferguson to inquire whether the Acting Architect Ayers would 'consider' abolishing [her] position to enable [her] to apply for 'discontinued service retirement.'" (Decl. ¶ 26.) Thus, the viability of Plaintiff's age discrimination claim depends on whether any employees under forty inquired about abolishment of their positions, but were treated more favorably. A plaintiff in a discrimination case must show that "all of the relevant aspects of" her "employment situation were nearly identical to those" of the employees outside of her protected class. *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1554 (D.C. Cir. 1997). Because Plaintiff has failed to allege facts sufficient to establish that her "employment situation was nearly identical" to any employees under 40, she has failed to create a genuine issue of material fact on her age claim.[3]

---

[3] Likewise, there is no evidence that Defendant hired someone younger than Plaintiff to assume the position Defendant created to replace the position Plaintiff had held.

SUMMARY MEMORANDUM OPINION; NOT INTENDED FOR PUBLICATION.

**D.     Gender Discrimination Claim (Count I):**

Plaintiff's gender discrimination claim, on the other hand, survives. In late winter 2008 or early spring 2009, Plaintiff experienced "professional difficulties with" her immediate supervisor, Tiscione. (Medlin Decl. ¶ 19.) Plaintiff contacted Ferguson to schedule an appointment to meet with him to discuss those issues. According to Plaintiff, the two of them were scheduled to meet privately, but she discovered just before the planned meeting that Tiscione was also scheduled to attend. Plaintiff refused to discus her "difficulties" in the presence of Tiscione. Plaintiff also became "frustrated and emotionally distraught and broke down in uncontrollable sobbing and crying for approximately 20 minutes." (*Id*. ¶ 23.) Plaintiff then advised Ferguson that her "inordinate work load" was causing her "stress" and "frustration." (*Id*. ¶ 24.) Ferguson "did not address" Plaintiff's problem and "offered no solution for [Plaintiff's] distress." (*Id*. ¶ 25.) Out of "desperation," Plaintiff asked Ferguson to inquire whether the Acting Architect would "consider" abolishing Plaintiff's job so that she could apply for a "discontinued service retirement." (Medlin Decl. ¶ 26.)

Unbeknownst to Plaintiff, around this same time, her immediate supervisor had requested abolishment of her own position. Plaintiff claims she would not have asked about possible abolishment of her job had she known Tiscione's position might be eliminated. (*Id*. ¶¶ 29-30.) Although Plaintiff never "formally or informally" advised Defendant that she "wanted her position abolished," (Pl.'s Br. at 3; *see* Medlin Decl. ¶ 40), Defendant abolished both her position and Tiscione's position during a workforce management reorganization precipitated by Office of Personnel Management policies and the Chief Human Capital Officers Act of 2002. (Ferguson Decl. ¶¶ 2, 6-8, 10.) Prior to official notification that her position was going to be abolished, Ferguson asked Plaintiff on three separate occasions whether she had made a decision about the "discontinued service retirement." (Medlin Decl. ¶¶ 31-39.) On two of those occasions she responded she was

undecided, but the third time she informed Ferguson that she had decided against taking the "discontinued service retirement." (*Id.*) Thus, she was surprised to receive the June 30 letter indicating her position had been abolished. (Medlin Decl. ¶ 39.)

In her complaint, Plaintiff claims no males had their positions abolished. This fact alone does not create evidence of discriminatory motive, as there is no evidence males asked to have their positions abolished or inquired about the possibility.

More troubling is Plaintiff's allegation, found in her Declaration, regarding Defendant's accommodation of male employees:

> Based on my prior knowledge of Defendant's accommodating male employees with employment options other than "discontinued service retirement" even when termination actions were warranted to be taken against said other male employees, I had a reasonable good faith belief that I was discriminated against based on my female gender.

(Medlin Decl. ¶ 45.)

Given these claims, the Court will deny Defendant's motion as premature. Specifically, it is clear that Plaintiff put Defendant on notice that she was having trouble with her immediate supervisor and Defendant was aware that the immediate supervisor would soon be leaving her position. Yet, Defendant failed to "address" Plaintiff's problem or "offer [a] solution for [Plaintiff's] distress." (Medlin Decl. ¶ 25.) Instead, Defendant went forward with Plaintiff's "inquiry" about abolishing her position when it was clear that the issue might resolve itself and that Plaintiff had decided she did not want to seek early retirement. Moreover, according to Plaintiff, Defendant did not actually abolish her position, but only restructured the position and failed to grant her an interview for the new position despite a "qualified" applicant rating. Thus, to the extent Plaintiff can more specifically point to examples of Defendant's willingness to find alternatives to retirement for male employees with similar workplace issues, she may be able to provide sufficient evidence of

discriminatory intent. Without discovery, however, she will be unable to do so. [4]

## CONCLUSION

For the reasons set forth above, by separate order, Defendant's motion will be granted, in part, and denied, in part.

SO ORDERED.

August 19, 2011.

/s/

_____
Robert L. Wilkins
United States District Judge

---

[4] Plaintiff's reliance on 5 U.S.C. § 8336(d) and 5 C.F.R. § 831.503 as evidence that Defendant should have offered her an alternative position is without merit. These provisions simply prohibit an employee from collecting an annuity <u>if</u> the employee declines a reasonable offer of another position in the employee's agency; the cited provisions do not <u>require</u> that the employer offer the employee another position.